IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**LIMARY SANCHEZ-ESTRADA,**

**Plaintiffs,**

**v.**

**MAPFRE PRAICO INSUR. CO.**, et al.,

**Defendants.**

Civil No. 13-1692 (GAG)

## OPINION & ORDER

Limary Sanchez-Estrada ("Plaintiff") sues MAPFRE PRAICO Insurance Company ("Mapfre"), its subsidiary Multiservicar, Inc. ("Multiservicar"), John Doe Corporation, and ABC Insurance Company (collectively "Defendants") for violations of Title VII; Title I of the Americans with Disabilities Act ("ADA"); Law 44 of July 2, 1985, P.R. LAWS ANN. tit., 1 §§ 501 *et seq.*; Law 100 of June 30, 1959, P.R. LAWS ANN. tit., 29 §§ 146 *et seq.*; Law 3 of March 13, 1942, P.R. LAWS ANN. tit., 29 §§ 469 *et seq.*; Article 1802, P.R. LAWS ANN. tit., 31 § 5141, and; Law 379 of May 15, 1948, P.R. LAWS ANN. tit., 29 §§ 277-288. (Docket No. 1.) Defendants submitted a partial motion to dismiss the Title VII,[1] ADA, Law 44, Law 100, and Article 1802 claims. (See generally Docket No. 4.) The court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss at Docket No. 4.

**I.    Standard of Review**

---

[1] The motion to dismiss initially states that Defendants intend to move to dismiss the Title VII claim; however, the motion does not meaningfully address the Title VII claim and, therefore, this claim is not dismissed.

**Civil No. 13-1692 (GAG)**

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Id. at 555. In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' -'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

A plaintiff need not allege sufficient facts to meet the evidentiary *prima facie* standard. See generally Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49 (1st Cir. 2013). *Prima facie* elements "are part of the background against which a plausibility determination should be made." Id. at 54 (external citations omitted). "[T]he elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim." Id. (emphasis added).

**II. Factual Background[2]**

---

[2] The court recites all of the facts found in the complaint, by in large, in sequential order. (See Docket No. 1 at 4-12.)

**Civil No. 13-1692 (GAG)**

Multiservicar hired Plaintiff as a receptionist in June 2011. Plaintiff passed her probationary period and became a full-time employee. In January 2012, Plaintiff was promoted to service counselor and received a raise, medical benefits, and retirement benefits.

Multiservicar hired Hadasha Alamo ("Alamo"), an attractive young woman, in February 2012. Alamo filled in as the receptionist after Plaintiff was promoted. Mapfre's Security Chief, Anthony Maldonado ("Maldonado"), began showing an uncommon interest in Alamo during his visits to their office.

On September 20, 2012, Plaintiff found out she was pregnant. On September 24, 2012, she verbally notified her immediate supervisor, Jose Oyola ("Oyola"), of her pregnancy. On September 27, 2012, she verbally notified Mapfre's personnel department through its Human Resources Director, Wanda Rosario ("Rosario"). She presented Rosario and Luis Crespo ("Crespo"), Oyola's supervisor, with an email from her physician that substantiated her claim of pregnancy on October 24, 2012.

Around the time she disclosed her pregnancy, Maldonado and Alamo were engaged in a personal relationship. They had lunch together, rode in the same car together, and left work together in the same car. Prior to disclosing her pregnancy, Plaintiff had been reprimanded only once. The reprimand concerned a disagreement with Alamo. After the disagreement with Alamo, Maldonado insisted that Plaintiff wear safety shoes because Plaintiff had to visit a workshop where vehicles were repaired. He failed to cite any company policy requiring the protection. Furthermore, the rest of the employees in her unit were not required to wear the shoes despite having to enter the area more frequently than Plaintiff. The shoes were ugly and uncomfortable. This prompted Plaintiff to file a grievance with the Human Resources Department on September 10, 2012, before Plaintiff knew she was pregnant. Plaintiff claims the Human Resources Department investigated and brushed aside the relationship between Maldonado and Alamo.

On October 23, 2012, Defendants implemented a policy requiring all employees to wear a work uniform. They excepted Plaintiff from this requirement because they did not have the budget

**Civil No. 13-1692 (GAG)**

to cover the cost of maternity uniforms. Plaintiff claims this made her stand out.

On October 29, 2012, Oyola informed Plaintiff that she could not continue to work until she produced a certificate that she was fit to work during her pregnancy. From November 7 to November 12, 2012, Plaintiff was hospitalized due to complications arising from her pregnancy. She advised Oyola that she would be back at work on November 14, 2012. Oyola called Plaintiff on November 13, 2012 to inquire whether she would return the next day and Plaintiff, in fact, returned to work the next day with her physician's approval, which she produced in the form of a physician's certificate.

On November 15, 2012, Plaintiff was reprimanded in writing for missing work due to her pregnancy-based hospitalization. On November 26, 2012, notwithstanding the fact that 2012 had not yet run its course, Defendants gave Plaintiff her yearly evaluation for the time period of January 1, 2012 to December 31, 2012. Her evaluation was negative, particularly concerning her assistance and productivity. Oyola told Plaintiff he had prepared her original evaluation and that Mapfre's Human Resources Department had not accepted it. Instead, Crespo prepared the evaluation despite only working in Plaintiff's department for three months.

On December 4, 2012, Plaintiff was about to leave work early for a medical appointment related to her pregnancy. She had informed her supervisors of the appointment. Just before leaving, however, she was suspended for three days for "inadequate assistance." Until the suspension, all of her absences were due to her pregnancy or pregnancy-related illnesses, all of which were justified in writing by her treating physicians.

On December 10, 2012, the Human Resources Department notified Plaintiff that her medical certificates failed to clearly show that the dates she missed work were directly related to her pregnancy. Many of the certificates were written by emergency medical physicians who treated Plaintiff or her OB/GYN.

On January 9, 2013, Plaintiff was required to rest for the duration of her pregnancy. She requested that the Human Resources Department help her with short-term disability benefits. She claims Mapfre failed to timely act because she did not receive benefits until March 2013.

4

**Civil No. 13-1692 (GAG)**

During the course of her pregnancy, Plaintiff developed three chronic health conditions. She suffered from low blood pressure, hypothyroidism, and back spasms. These conditions caused doctors to classify her pregnancy as "high risk."

Plaintiff alleges four examples of adverse employment action arising from her pregnancy and consequent disability: 1) the three reprimands; 2) the negative employment evaluation; 3) suspension from employment, and; 4) constructive termination. Specifically, she alleges she was punished and admonished for taking time off to visit the doctor during her pregnancy, being physically unable to work during certain times throughout the course of her pregnancy, and being less productive due to her pregnancy. Plaintiff claims she never exceeded the leave allowed by Puerto Rico law for illness or pregnancy, and that she properly documented her absences.

After giving birth to her daughter and exhausting her maternity leave, Plaintiff resigned because she no longer wanted to work for an employer she believed discriminated against her on account of her pregnancy and gender. She filed a claim with Puerto Rico's Anti-Discrimination Unit ("ADU") within 180 days of her termination, seeking damages and $1,063.21 in back pay for accrued overtime. She brought the instant action within 90 days of receiving a right-to-sue letter from the ADU.

**III.    Discussion**

Defendants move to dismiss part of Plaintiff's complaint. They ask the court to dismiss certain aspects of the complaint because Plaintiff purportedly: (1) failed to exhaust administrative remedies pursuant to her disability discrimination claims; (2) failed to allege enough facts to support sex discrimination and tort claims independent of her pregnancy discrimination claim, and; (3) they also aver that she may not base her pregnancy discrimination claim on Law 100.

        A.    Failure to Exhaust Administrative Remedies for Disability Discrimination Claim

An "employee alleging discrimination must file an administrative claim with the EEOC" or a parallel state agency "before a civil action may be brought" in a case brought under Title I of the ADA. Thornton v. UPS, Inc., 587 F.3d 27, 31 (1st Cir. 2009); see also Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277-78 (1st Cir. 1999) (requiring administrative remedy exhaustion in

**Civil No. 13-1692 (GAG)**

Title I case). The employee may bring a civil action only if the agency has dismissed the complaint or failed to begin a civil action within 180 days of the filing. Thornton, 587 F.3d at 31.

      Defendant's argument is simple. Before filing this complaint, Plaintiff received a right-to-sue letter from the ADU and EEOC concerning its gender and pregnancy discrimination claims, but not the disability-based discrimination claim. Plaintiff, Defendants state, filed a separate charge for disability discrimination that had yet to fully run the administrative course. (Docket No. 4 at 5-6.) Defendants were correct when they filed their motion to dismiss. However, the ADU referred the disability discrimination matter to the EEOC and suggested issuance of a right to sue letter, which was issued on November 19, 2013. (See Docket No. 14-1.) Defendants' motion to dismiss Plaintiff's disability discrimination claims under the ADA and Law 44[3] is thus **MOOT**. The issuance of the letter does not change the fact that Plaintiff filed this disability-based discrimination claim before receiving the letter, thereby breaching the rules of exhaustion. However, given that the EEOC has issued the letter and it would be a waste of judicial economy to entertain the disability-based claim separately, the court refrains from dismissing it. Plaintiff's attorney is admonished to follow the rules.

      B.    Failure to State a General Claim for Gender Discrimination

      Defendants next claim that Plaintiff fails to allege enough facts to support a sex discrimination claim independent of her pregnancy discrimination claim. The court agrees. The entirety of Plaintiff's complaint surrounds her pregnancy and quarrel with Alamo. Each adverse employment action ostensibly arose from her pregnancy, not her gender, though the two are inextricably linked. Nothing in the complaint informs Defendants that they discriminated against Plaintiff simply because she is a woman. The complaint clearly alleges that they discriminated against her because she was pregnant, not because she is a woman. See Rivas Rosado v. Radio

---

[3] See Ruiz Rivera v. Pfizer Pharms, LLC, 521 F.3d 76, 81 n.4 (1st Cir. 2008) ("Law 44 mirrors the ADA and require[s] no separate analysis."); see also Gonzalez v. El Dia, Inc., 304 F.3d 63, 74 n.9 (1st Cir. 2002) (same).

**Civil No. 13-1692 (GAG)**

Shack, Inc., 312 F.3d 532, 534 (1st Cir. 2002) ("The mere fact that the decision makers were [of opposite sex] does not alone, absent other evidence, create an inference that they engaged in gender discrimination."). Any claim for gender discrimination not based on pregnancy is thus **DISMISSED**.

        C.      Pregnancy Discrimination under Law 100

Defendants contend that Plaintiff may not base her pregnancy discrimination claim on Law 100. (Docket No. 4 at 7-8.) To be clear, Defendants are not asserting that Puerto Rico law does not protect women from pregnancy-based discrimination. To the contrary, Defendants state, "It is widely acknowledged that under both federal and local law, pregnancy discrimination is a form of discrimination because of sex," and proceed to cite "Act No. 3" as the local vehicle through which to litigate these claims. (Id. at 7.) Law 100 is a "broad antidiscrimination statute analogous to Title VII in many respects." Perez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 26 n.10 (1st Cir. 2011). Puerto Rico has many statutes that identify with greater specificity behavior that Law 100 prohibits and that must be interpreted *in pari materia* with Law 100. See e.g., id. (citations omitted). Because the First Circuit directs concurrent consideration of Law 100 and the more specific statute, the court **DENIES without prejudice** Defendants' motion to dismiss the pregnancy discrimination claim pursuant to Law 100.

        D.      Sufficiency of Plaintiff's Independent Tort Claim

Defendants ask the court to dismiss Plaintiff's tort claim because it fails to allege enough facts to support a claim under Article 1802. (See Docket No. 4 at 8-10.) Plaintiff concedes that her Article 1802 claim should be dismissed. (Docket No. 9 at 9.) Therefore, the court **DISMISSES** Plaintiff's Article 1802 claim.

**IV.   Conclusion**

For the abovementioned reasons, the court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss at Docket No. 4.


    **SO ORDERED.**

**Civil No. 13-1692 (GAG)**

In San Juan, Puerto Rico this 9th day of December, 2013.

/S/ Gustavo A. Gelpí

GUSTAVO A. GELPI

United States District Judge